UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


BENITO RAMIREZ,

                    Petitioner,

vs.                                     Case No. 3:16-cv-376-J-39JRK

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

                    Respondents.
_____


**<u>ORDER</u>**

**I.  INTRODUCTION**

       Petitioner Benito Ramirez maintains in his Second Amended
Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a
Person in State Custody (Petition) (Doc. 7) that he has been
convicted in violation of his constitutional rights.  The record
shows he was convicted of first degree murder and is serving a life
sentence.  He challenges this 2012 Duval County conviction through
his pro se Petition and raises seven grounds for post conviction
relief.  Respondents filed an Answer to Petition for Writ of Habeas
Corpus (Response) (Doc. 16) addressing the seven grounds.[1]
Petitioner opted to file a Reply (Doc. 35).  <u>See</u> Order (Doc. 11).

_____

       [1] The Court hereinafter refers to the exhibits appended to the
Exhibits to Answer to Petition for Writ of Habeas Corpus (Doc. 17)
as "Ex."  Where provided, the page numbers referenced in this
opinion are the Bates stamp numbers at the bottom of each page of
the exhibit.  Otherwise, the page number on the particular document
will be referenced.

## II.  CLAIMS

The seven grounds of the Petition are: (1) the Florida standard jury instruction on reasonable doubt and burden of proof is unconstitutional due to the probability that the jurors misunderstood the instructions, likely employing a lesser degree of certainty to find the Defendant guilty of murder, in violation of Petitioner's right to due process of law; (2) the ineffective assistance of counsel for failure to ensure Petitioner was able to communicate with his counsel during trial by either obtaining Spanish speaking counsel or an interpreter for trial; (3) the involuntariness of Petitioner's statement during an interrogation based on the detective's failure to give Petitioner the time or opportunity to read the Miranda form, Petitioner could not read the form because it was written in English and he did not read or write English at that time, and the detective's insistence that Petitioner sign the form, although Petitioner did not understand its contents; (4) the involuntariness of Petitioner's statement during an interrogation based on the detective's actions of reading the Miranda form in Spanish, but changing the words, obfuscating the clarity of the warnings and resulting in an involuntary act; (5) the ineffective assistance of counsel for failure to provide Petitioner with an interpreter so as to adequately advise Petitioner concerning his right to testify, resulting in Petitioner electing to testify without making a conscious choice to do so; (6)

the denial of Petitioner's confrontation rights through the trial court's restriction of cross examination of Detective Bodine regarding his conversations with Jacob Smock and Nicholas Doland; and (7) the ineffective assistance of appellate counsel for failure to raise the claim on appeal that the jury was given an erroneous instruction and not given a corrective instruction on manslaughter, eliminating the intent element.

### III.   EVIDENTIARY HEARING

In this case, the pertinent facts are fully developed in the record or the record otherwise precludes habeas relief; therefore, the Court is able to "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Thus, the Court will not conduct an evidentiary hearing as the record refutes the asserted factual allegations or otherwise precludes habeas relief. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Since Petitioner has not met the burden to establish the need for a federal evidentiary hearing, the Court will address the Petition without further factual development. Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011), cert. denied, 565 U.S. 1120 (2012).

## IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus.[2] See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017).  "AEDPA limits the scope of federal habeas review of state court judgments[.]" Pittman v. Sec'y, Fla. Dep't of Corr., 871 F.3d 1231, 1243 (11th Cir. 2017), cert. denied, 139 S.Ct. 102 (2018).  This narrow scope of review under AEDPA provides for habeas relief only if there are extreme malfunctions, certainly not to be used as a means to correct state court errors. Ledford, 818 F.3d at 642 (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).  "Under AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 900 F.3d 1330, 1344 (11th Cir. 2018) (citation omitted).  Indeed, ~~federal~~ courts may grant habeas relief:

> only when the adjudication of a federal
> constitutional claim "on the merits in State
> court proceedings" either "resulted in a
> decision that was contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States" or
> "resulted in a decision that was based on an
> unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding." 28 U.S.C. § 2254(d).  "This
> narrow evaluation is highly deferential, for a
> state court's determination that a claim lacks

---

[2] The Petition is timely.  See Response at 2-7.

merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Morrow v. Warden</u>, 886 F.3d 1138, 1146–47 (11th Cir. 2018) (alteration adopted) (internal quotation marks omitted) (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The decision of a state court is "contrary to" federal law only if it "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." <u>Cummings v. Sec'y for Dep't of Corr.</u>, 588 F.3d 1331, 1355 (11th Cir. 2009) (citation and internal quotation marks omitted). The decision of a state court "involves an unreasonable application of federal law if it identifies the correct governing legal principle as articulated by the United States Supreme Court, but unreasonably applies that principle to the facts of the petitioner's case, unreasonably extends the principle to a new context where it should not apply, or unreasonably refuses to extend it to a new context where it should apply." <u>Id</u>. (citation and internal quotation marks omitted). "The question ... is not whether a federal court believes the state court's determination was correct but whether that determination was unreasonable—a substantially higher threshold." <u>Id</u>. (citation and internal quotation marks omitted).

<u>Wilson v. Warden, Ga. Diagnostic Prison</u>, 898 F.3d 1314, 1321 (11th Cir. 2018).

This Court will not "flyspeck the state court order or grade it." <u>Id</u>. at 1345. Instead, the Court is charged with reviewing the conclusions of the state court, deferring to the state court decisions, and granting habeas relief only if the adjudication of the claim resulted in a decision that was contrary to, or involved

an unreasonable application of Supreme Court precedent. "We also must presume that 'a determination of a factual issue made by a State court [is[ correct,' and the petitioner 'ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)." Morrow v. Warden, 886 F.3d 1138, 1147 (11th Cir. 2018), petition for cert. filed, (U.S. Oct. 19, 2018) (No. 18-6409). Additionally, "[t]his presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 568 U.S. 1233 (2013).

In this regard:

> "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims.'" Wilson v. Sellers, --- U.S. ----, 138 S.Ct. 1188, 1191-92, --- L.Ed.2d ---- (2018) (quoting Hittson v. Chatman, --- U.S. ----, 135 S.Ct. 2126, 2126, 192 L.Ed.2d 887 (2015) (Ginsberg, J., concurring in denial of certiorari) ). The Supreme Court recently held that, when the relevant state court decision is not accompanied by a reasoned opinion explaining why relief was denied, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." Id. at 1192. "[T]he State may rebut the presumption by showing that the

> unexplained affirmance relied or most likely
> did rely on different grounds than the lower
> state court's decision." Id.

Johnson v. Sec'y, Dep't of Corr., 737 F. App'x 438, 441 (11th Cir.
2018) (per curiam).

Bearing in mind this guidance from the Supreme Court, this
Court undertakes its review of Petitioner's seven claims. If the
last state court to decide a federal claim provides an explanation
for its merits-based decision in a reasoned opinion, this Court
simply reviews the specific reasons given by the state court and
defers to those reasons, if they are reasonable. On the other
hand, if the relevant state-court decision is not accompanied by a
reasoned opinion, simply stating affirmed or denied, this Court
should "look through" the unexplained decision to the last related
state-court decision that provides relevant rationale. This Court
presumes the unexplained decision adopted the same reasoning as the
lower court; however, the presumption is not irrebutable, as strong
evidence may refute the presumption. See Kernan v. Hinojosa, 136
S.Ct. 1603, 1606 (2016) (per curiam). Thus, the state may rebut
the presumption by showing the higher state court relied or most
likely relied on different grounds than the lower state court,
"such as alternative grounds for affirmance that were briefed or
argued to the state supreme court or obvious in the record it
reviewed." Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018).

Although the § 2254(d) standard is difficult to meet, the
standard is meant to be difficult. Rimmer v. Sec'y, Fla. Dep't of

<u>Corr.</u>, 876 F.3d 1039, 1053 (11th Cir. 2017) (opining that to reach the level of an unreasonable application of federal law, the ruling must be objectively unreasonable, not merely wrong or even clear error), <u>cert</u>. <u>denied</u>, 138 S.Ct. 2624 (2018).  When applying the stringent AEDPA standard, state court decisions must be given the benefit of the doubt.  <u>Trepal v. Sec'y, Fla. Dep't of Corr.</u>, 684 F.3d 1088, 1107 (11th Cir. 2012) (quotation and citations omitted), <u>cert</u>. <u>denied</u>, 568 U.S. 1237 (2013).

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In order to prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). A counsel's performance is deficient only if counsel's "identified acts or omissions were outside the wide range of professionally competent assistance."  <u>Id</u>. at 690.  And importantly, with regard to the establishment of prejudice requirement, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome."  <u>Id</u>. at 694.

Finally, in order to prevail on a claim of ineffective assistance of counsel, both parts of the <u>Strickland</u> test must be satisfied.  <u>Bester v. Warden, Att'y Gen. of the State of Ala.</u>, 836

F.3d 1331, 1337 (11th Cir. 2016) (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)), <u>cert</u>. <u>denied</u>, 137 S.Ct. 819 (2017). However, a court need only address one prong, and if it is found unsatisfied, the court need not address the other prong. <u>Id</u>.

### VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner raises a claim of ineffective assistance of appellate counsel in ground seven of the Petition. The two-part <u>Strickland</u> standard is applicable to this claim. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). This Circuit recognizes:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under <u>Strickland</u>.") (quotation marks omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at 2064.

<u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of <u>Strickland</u> and § 2254(d) requires a doubly deferential review of a state court decision. <u>See</u> <u>Harrington v.</u>

<u>Richter</u>, 562 U.S. 86, 105 (2011); <u>see</u> <u>also</u> <u>Gissendaner v. Seaboldt</u>, 735 F.3d 1311, 1323 (11th Cir. 2013) ("This double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.") (quotation marks and alteration omitted), <u>cert</u>. <u>denied</u>, 135 S.Ct. 159 (2014). Indeed, the Supreme Court has opined that "[i]f this standard is difficult to meet, that is because it was meant to be." <u>Richter</u>, 562 U.S. at 102.

When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." <u>Id</u>.[3] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. <u>See</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Smith v. Robbins</u>, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986)); <u>see</u> <u>also</u> <u>Burger v. Kemp</u>, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

<u>Overstreet</u>, 811 F.3d at 1287; <u>see</u> <u>also</u> <u>Owen v. Sec'y, Dep't of Corr.</u>, 568 F.3d 894, 915 (11th Cir. 2009) (stating "any deficiencies of counsel in failing to raise or adequately pursue

---

[3]    <u>Strickland</u>, 466 U.S. at 689.

[meritless issues on appeal] cannot constitute ineffective assistance of counsel"), <u>cert</u>. <u>denied</u>, 558 U.S. 1151 (2010).

To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004) (citations omitted), <u>cert</u>. <u>denied</u>, 543 U.S. 1080 (2005); <u>see</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) ("In order to establish prejudice, we must first review the merits of the omitted claim. Counsel's performance will be deemed prejudicial if we find that 'the neglected claim would have a reasonable probability of success on appeal.'") (citations omitted), <u>cert</u>. <u>denied</u>, 559 U.S. 1010 (2010).

## VII. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground for habeas relief, Petitioner claims the Florida standard jury instruction on reasonable doubt and burden of proof is unconstitutional due to the probability that the jurors misunderstood the instructions, likely employing a lesser degree of certainty to find the Defendant guilty of murder, in violation of Petitioner's right to due process of law. Petition at 5. The record shows the trial court instructed the jury:

> Whenever the words "reasonable doubt" are used, you must consider the following:
>
> A reasonable doubt is not a mere possible doubt, a speculative, imaginary, or forced

doubt.  Such a doubt must not influence you to
return a verdict of not guilty if you have an
abiding conviction of guilt.  On the other
hand, if after carefully considering,
comparing and weighing all of the evidence,
there is not an abiding conviction of guilt or
if having a conviction, it is one which is not
stable but one which wavers and vacillates,
then the charge is not proved beyond every
reasonable doubt and you must find the
defendant not guilty because the doubt is
reasonable.

It is to the evidence introduced in this
trial and to it alone that you are to look for
that proof.

A reasonable doubt as to the guilt of the
defendant may arise from the evidence,
conflict in the evidence, or the lack of
evidence.

If you have a reasonable doubt, you
should find the defendant not guilty.  If you
have no reasonable doubt, you should find the
defendant guilty.

Ex. 23 at 776.

The court also instructed: "[i]f you return a verdict of
guilty, it should be for the highest offense which has been proven
beyond a reasonable doubt.  If you find that no offense has been
proven beyond a reasonable doubt, then of course your verdict must
be not guilty."  <u>Id</u>. at 782.  The jury returned a verdict of guilty
of murder in the first degree as charged in the information, and
the jury also found the defendant did carry, display, use, threaten
to use or attempt to use a deadly weapon during the commission of
the offense.  Ex. 17 at 598-600.

Petitioner raised this claim in his Rule 3.850 motion, Ex. 29 at 4-15, but the circuit court rejected the claim as procedurally barred, as it should have been raised on direct appeal. <u>Id</u>. at 47-48. Petitioner appealed the denial of this claim as procedurally barred, and the First District Court of Appeal (1st DCA) summarily affirmed. Ex. 30.

Respondents assert the claim raised in ground one regarding the constitutionality of the jury instructions on reasonable doubt and burden of proof is unexhausted and procedurally defaulted as Petitioner cannot return to the 1st DCA and pursue a second direct appeal. Response at 20-23. The Supreme Court has imparted that a federal petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state court remedies. <u>Castille v. Peoples</u>, 489 U.S. 346, 349 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). A procedural default arises "when 'the petitioner fails to raise the [federal] claim in state court and it is clear from state law that any future attempts at exhaustion would be futile.'" <u>Owen</u>, 568 F.3d at 908 n.9 (quoting <u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1304 (11th Cir. 2003)).

Since the question of exhaustion has been raised, this Court must ask whether Petitioner's claims were fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the

petitioner must have "fairly presented [it] to
the state courts." <u>McNair v. Campbell</u>, 416
F.3d 1291, 1302 (11th Cir. 2005). The Supreme
Court has suggested that a litigant could do
so by including in his claim before the state
appellate court "the federal source of law on
which he relies or a case deciding such a
claim on federal grounds, or by simply
labeling the claim 'federal.'" <u>Baldwin v.
Reese</u>, 541 U.S. 27, 32, 124 S.Ct. 1347, 158
L.Ed.2d 64 (2004). The Court's guidance in
<u>Baldwin</u> "must be applied with common sense and
in light of the purpose underlying the
exhaustion requirement"—namely, giving the
state courts "a meaningful opportunity" to
address the federal claim. <u>McNair</u>, 416 F.3d at
1302. Thus, a petitioner could not satisfy the
exhaustion requirement merely by presenting
the state court with "all the facts necessary
to support the claim," or by making a
"somewhat similar state-law claim." <u>Kelley</u>,
377 F.3d at 1343-44. Rather, he must make his
claims in a manner that provides the state
courts with "the opportunity to apply
controlling legal principles to the facts
bearing upon (his) [federal] constitutional
claim." <u>Id</u>. at 1344 (quotation omitted).

<u>Lucas v. Sec'y, Dep't of Corr.</u>, 682 F.3d 1342, 1351-52 (11th Cir.

2012), <u>cert</u>. <u>denied</u>, 568 U.S. 1104 (2013).

The doctrine of procedural default requires the following:

Federal habeas courts reviewing the
constitutionality of a state prisoner's
conviction and sentence are guided by rules
designed to ensure that state-court judgments
are accorded the finality and respect
necessary to preserve the integrity of legal
proceedings within our system of federalism.
These rules include the doctrine of procedural
default, under which a federal court will not
review the merits of claims, including
constitutional claims, that a state court
declined to hear because the prisoner failed
to abide by a state procedural rule. <u>See</u>,
<u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747-748, 111 S.Ct.
2546; <u>Sykes</u>, <u>supra</u>, at 84-85, 97 S.Ct. 2497. A

> state court's invocation of a procedural rule
> to deny a prisoner's claims precludes federal
> review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
> v. Martin</u>, 562 U.S. ----, ----, 131 S.Ct.
> 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard
> v. Kindler</u>, 558 U.S. ----, ----, 130 S.Ct.
> 612, 617-618, 175 L.Ed.2d 417 (2009). The
> doctrine barring procedurally defaulted claims
> from being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
> 111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012).

Here, Petitioner failed to abide by a state procedural rule by failing to raise the claim on direct appeal. The rule upon which the state court denied relief is firmly established and consistently followed. <u>See</u> <u>Israel v. State</u>, 985 So.2d 510, 520 (Fla. 2008) (per curiam). The 1st DCA's affirmance of the finding of a procedural bar is a "sufficiently clear and express statement of reliance on an independent and adequate state ground" to bar consideration of the claim by this Court. <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990). Further, because Florida's procedural rules do not provide for successive direct appeals, Petitioner's claim is procedurally defaulted.

There are, however, allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from

a violation of federal law." <u>Martinez</u>, 566 U.S. at 10 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). If cause is established, a petitioner is required to demonstrate prejudice. In order to demonstrate prejudice, a petitioner must show "that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred." <u>Owen</u>, 568 F.3d at 908. More particularly, to demonstrate cause, a petitioner must show that some objective factor external to the defense impeded his effort to properly raise the claim in state court. <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999).

As cause, Petitioner submits that his trial counsel was ineffective for failure to preserve the claim and his appellate counsel performed deficiently by failing to raise the constitutional claim on direct appeal. Reply at 3. It is important to recognize that appellate counsel cannot be found ineffective for failure to raise an issue that was not preserved at trial. <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136, 1142 (11th Cir.) (citation omitted), <u>cert</u>. <u>denied</u>, 546 U.S. 1064 (2005). Upon review, there was no objection to these instructions at trial. Ex. 22 at 710-12; Ex. 23 at 716-19. In fact, defense counsel did not raise any errors, exceptions, or objections to the instructions as read. Ex. 23 at 790.

Petitioner, in his Reply, explains that he thought his trial counsel was going to request a special jury instruction on

reasonable doubt "because he [the defense attorney] believed the language of the standard jury instructions defined proof beyond a reasonable doubt as the existence of 'an abiding conviction of guilt' which directed a guilty verdict regardless of the possibility of innocence." Reply at 4. Petitioner contends the jury should have been instructed a reasonable hypothesis of innocence implies a reasonable doubt, and counsel's failure to seek such an instruction or object to the reading of the standard jury instruction deprived Petitioner of his direct appeal on the issue. Reply at 4; Ex. 29 at 7.

Interestingly,

> in cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard. While Florida may apply the Jackson[4] standard in resolving an ordinary sufficiency claim, see, e.g., Melendez v. State, 498 So.2d 1258, 1261 (Fla.1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," Thorp v. State, 777 So.2d 385, 389 (Fla. 2000) (per curiam) (quotation omitted). It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." Id. (quotation omitted); see, e.g., Lowe v. State, 90 Fla. 255, 105 So. 829, 830 (1925) (requiring that the evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a

---

[4] Jackson v. Virginia, 443 U.S. 307 (1979).

- 17 -

moral certainty every hypothesis but that of
his guilt").

Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 460 (11th Cir.
2015).

Of import, although not completely prohibited, Florida has
eliminated the circumstantial evidence instruction from its
standard instructions; "[t]he special treatment afforded
circumstantial evidence has previously been eliminated in our
[Florida's] civil standard jury instructions and in the federal
courts." Matter of Use by Tr. Courts of Stand. Jury Instructions
in Crim. Cases, 431 So.2d 594, 595 (Fla. 1981) (citing Holland v.
United States, 348 U.S. 121 (1954)), modified sub nom. In Matter of
Use by Tr. Courts of Stand. Jury Instructions in Crim. Cases, 431
So.2d 599 (Fla. 1981) (per curiam). According to both the Florida
Supreme Court and the United States Supreme Court, the
circumstantial evidence instruction is unnecessary if the jury is
properly instructed on the standards for reasonable doubt.

In this case, the jury was properly instructed on the
standards for reasonable doubt. Prior to charging the jury, the
trial court conducted a charge conference, and the state and the
defense agreed to the instructions. Ex. 22 at 710-12, Ex. 23 at
716. The court inquired as to whether Petitioner had the
opportunity to participate in the charge conference, and he
responded affirmatively. Id. at 716-17. After conferring with
defense counsel, with the aid of the interpreter, Petitioner

confirmed that these were the "right instructions" and should be given to the jury. <u>Id</u>. at 717-19.

Since an additional instruction on circumstantial evidence leads to confusion, Florida courts are reluctant to provide this unnecessary and confusing instruction to juries:

> [t]he Supreme Court of Florida deleted the circumstantial evidence instruction from the standard jury instructions, finding that where the jury is properly instructed on the standard of reasonable doubt, the circumstantial evidence instruction was "confusing and incorrect." <u>In re Standard Jury Instructions</u>, 431 So.2d 594, 595 (Fla.1981) (quoting <u>Holland v. United States</u>, 348 U.S. 121, 139-40, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). The deletion of the instruction does not totally prohibit the instruction if the trial judge, in his discretion, opines that such is necessary under the peculiar facts of a specific case. <u>Id</u>.

<u>Henderson v. Solomon</u>, NO. 304-CV-206J-32HTS, 2006 WL 4757826, at *12 (M.D. Fla. Oct. 24, 2006).

In light of the removal of the circumstantial evidence instruction from the standard jury instructions, and in light of the Supreme Court's holding that the circumstantial evidence instruction causes undue confusion if the jury has been properly instructed, Petitioner's counsel cannot be found ineffective for failing to request the circumstantial evidence instruction or for failure to object to the lack of the instruction. Indeed, based on rulings of the United States and Florida Supreme Courts, it is generally unwise and unnecessary to instruct the jury on circumstantial evidence.

Petitioner has failed to show his counsel's performance was deficient for failing to request a circumstantial evidence instruction. Based on the record, both defense counsel and Petitioner were satisfied with the jury instructions as given to the jury. Thus, Petitioner has failed to show cause excusing his procedural default. Moreover, he does not meet the prejudice or manifest injustice exceptions. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). With respect to this unexhausted ground, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In conclusion, the Court finds ground one is unexhausted and procedurally defaulted. As Petitioner has failed to establish cause and prejudice or any factors warranting the application of

the fundamental miscarriage of justice exception to overcome the default, this ground is due to be denied as procedurally barred.

## B. Ground Two

In the second ground of the Petition, Petitioner raises a claim of the ineffective assistance of counsel for failure to ensure Petitioner was able to communicate with his counsel during trial by either obtaining Spanish speaking counsel or an interpreter. Petition at 6. Respondents contend this claim is unexhausted and procedurally defaulted. Response at 34-35. Upon review, this is not the same ground Petitioner raised in the trial court in his Rule 3.850 motion. Ex. 29 at 15-22. Upon review, in his post conviction motion, Petitioner claimed his counsel was ineffective for failing to provide him with a Spanish/English-speaking attorney or an interpreter for pre-trial preparation. Id. As such, ground two of the Petition is unexhausted and procedurally defaulted. Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if the claim is not reached on its merits.

Alternatively, ground two has no merit. The trial court provided Petitioner an interpreter for trial. Ex. 20; Ex. 21; Ex. 22; Ex. 23. Petitioner recognized this fact in his Rule 3.850 motion. Ex. 29 at 21. As Petitioner was provided with an interpreter for the duration of the trial, defense counsel was not ineffective for failure to ensure Petitioner was able to communicate with his counsel during the trial. Petitioner has

failed to satisfy the two prongs of <u>Strickland</u>, and he is not entitled to habeas relief on ground two.

## C. Grounds Three and Four

In grounds three and four of the Petition, Petitioner claims he gave an involuntary statement during an interrogation by the police. Petition at 8-10. In ground three, Petitioner claims the detective failed to give Petitioner the time or opportunity to read the Miranda form. <u>Id</u>. at 8. As a result, Petitioner contends he could not read the form because it was written in English and he did not read or write English at that time. <u>Id</u>. Petitioner also states he signed the form because the detective insisted that Petitioner sign the form even though Petitioner did not understand its contents. <u>Id</u>. In ground four, Petitioner claims the detective who read the Miranda form in Spanish, changed the words, obfuscating the clarity of the warnings, causing Petitioner to involuntary submit to giving the statement. <u>Id</u>. at 9-10.

These two grounds were presented to the trial court in claims three and four of the Rule 3.850 motion. Ex. 29 at 23-33. Respondents submit grounds three and four are unexhausted and procedurally defaulted. Response at 40-41. Not only did the trial court find these claims should have been raised on direct appeal, Ex. 29 at 50-51, the 1st DCA affirmed the trial court's decision per curiam. Ex. 30. Therefore, this Court is barred from considering grounds three and four. The trial court found the claim procedurally barred, and the appellate court affirmed, a

sufficiently clear and express statement of the state court's reliance on an independent and adequate state ground for denying review. <u>Harmon</u>, 894 F.2d at 1273. Thus, Petitioner has not shown cause for his default.

Petitioner, in his Reply, summarily states that ineffective assistance of counsel at trial and on direct appeal constitutes cause for his default. Reply at 6-7. The Court concludes trial counsel was not ineffective for failing to raise these two grounds, and appellate counsel was not ineffective for failing to pursue these non-meritorious grounds on direct appeal.

With regard to Petitioner's claim that the detective failed to give him the time or opportunity to read the Miranda form, the form was in English, and Petitioner could not read or write English, the record shows the following. Petitioner signed the Spanish version of the Miranda form. Ex. 16 at 555. Thus, Petitioner was not provided the English version to read and sign. During the interrogation, Petitioner advised the detective he could read Spanish. Ex. 22 at 531. Petitioner demonstrated he could read the form by reading the first line. <u>Id</u>. The detective read the rest of the form to Petitioner. <u>Id</u>. at 531-32. The detective asked Petitioner if he understood his rights. <u>Id</u>. at 532. The detective explained: "[h]ere, it says that I have read the Miranda rights and I understand this document." <u>Id</u>. The detective stated, "I need you to sign here, please, saying I read you this." <u>Id</u>. Petitioner inquired, "[s]ign right here?" <u>Id</u>. The detective responded,

"[y]es, just sign your name right here, uh huh. Okay, very good."
Id.[5]

Petitioner's assertion that the form was in English is belied by the record. Petitioner signed the Spanish version of the Miranda form after he read part of the form out loud and after the detective completed reading the form out loud. Again, Petitioner said he could read Spanish, and he demonstrated he could read Spanish.

There is no evidence that Petitioner's decision to sign the Miranda form was an involuntary act based on the insistence of the detective and without Petitioner's understanding of its contents. The trial transcript shows the following Miranda warnings were provided by Detective Parrales to Petitioner, in Spanish:

> You're not obligated to talk or to make any statements. Anything that you say can be used against you in court. You have the right to speak to an attorney before making any statements or before answering our questions and to have an attorney present during any interrogation. If you cannot afford an attorney, we can get one for you if that is what you wish. Before we begin our interrogation, if you decide to answer our questions without having an attorney present, you cannot -- you cannot -- you can stop answering questions at any time and speak to an attorney first. Do you understand your rights? Here it says that I have read the

---

[5] At trial, Detective Patrick Bodine testified Detective Parrales, an officer fluent in Spanish, conducted the entire interrogation in Spanish. Ex. 22 at 529. The video of the interrogation, in pertinent part, was played for the jury, including the portion concerning the signing of the Miranda form. Id. at 531-32.

> Miranda rights and I understand this document,
> I am willing to give a statement and answer
> questions and I do not currently want an
> attorney and I do understand what I'm doing.
> I have not been made any promises. I have not
> been threatened, forced, force has not been
> used against me. I have not been abused,
> right?

Ex. 22 at 531-32. Of import, the detectives gave Petitioner the written form, in Spanish. Ex. 16 at 555.

Although Detective Parrales stuttered somewhat during a portion of the reading of the Miranda warnings, he clarified his misstatement and said Petitioner could stop answering questions at any time and speak to an attorney first. Id. at 532. Thus, Petitioner's claim that the detective obfuscated the clarity of the warnings, resulting in an involuntary act by Petitioner, is contradicted by the record. Furthermore, Petitioner could clearly read Spanish and he signed the form provided to him in Spanish.

Neither Petitioner's trial counsel or his appellate counsel were ineffective for failing to pursue these issues. Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result if grounds three and four are not addressed on their merits.

### D. Ground Five

In his fifth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to provide Petitioner with an interpreter so as to adequately advise Petitioner concerning his right to testify, resulting in Petitioner electing to testify

without making a conscious choice to do so. Petition at 11. Plaintiff alleges that during trial, he spoke with counsel and then elected to testify. Id. A comparable claim was raised by Petitioner in his Rule 3.850 motion in claim five. Ex. 29 at 34-37. Petitioner appealed the denial of this ground, Ex. 29 at 82, and the 1st DCA affirmed. Ex. 30.

The record demonstrates Petitioner exhausted his state court remedies. Id. Respondents agree that Petitioner's claim that his counsel was ineffective in failing to provide him with an interpreter so as to adequately advise him of his right not to testify was adjudicated on its merits in the state courts. Response at 46-47. After due consideration, this Court concludes Petitioner is unable to establish that the state court decision denying this ground was contrary to or an unreasonable application of federal law.

Notably, the trial court properly applied the Strickland standard of review for this claim. Ex. 29 at 48. The trial court first set forth the ground for relief:

> Similarly, in Claim Five, the Defendant complains that counsel failed to properly inform him through an interpreter of his right not to testify. The Defendant states that "if counsel believed that it would be unwise for the Defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify . . . ." (Def's Mot. 36.) The Defendant contends that "if counsel had provided him with an interpreter, there would not have existed a language barrier . . . and he would have been aware of counsel's attempts

to twist his presentation of what supposedly happen [sic] and the Defendant would not have elected to testify at the trial." (Def's Mot. 37.) Defendant maintains that "without [his] trial testimony, the jury would have had a reasonable doubt, and found the Defendant not guilty, or at the least, the Defendant's motion of acquittal would have been granted." (Id.)

Ex. 29 at 49.

In denying Petitioner's claim, the court found:

The record shows that the Defendant had many opportunities to speak to counsel through an interpreter before trial. The online docketing system shows that the Court held at least thirteen status hearings before trial and that the Defendant, counsel, and a court-appointed interpreter were present at each hearing. (Ex. B.) Moreover, the trial transcripts show that after a discussion with counsel off the record during trial, the Defendant elected not to testify. (Ex. C.) As such, the Court finds the Defendant has failed to demonstrate that counsel was deficient, and, therefore, he is not entitled to relief.

Ex. 29 at 49.

Petitioner's fifth ground should be denied for numerous reasons. The trial record clearly shows Petitioner was provided with interpreters. Ex. 20 at 227. Each interpreter was duly sworn in by the clerk. Id. The trial court made a concerted effort to ensure that the interpreter was present and effectively assisting Petitioner and his counsel. Id at 231, 233-34. The court informed the jury that the defense was using interpreters to perform translation. Id. at 257. The court inquired of Petitioner as to whether he was having any problem following along with the

witnesses with the assistance of the interpreter. Id. at 274. Petitioner told the judge he would let him know if he had any problem with the equipment or the interpretation. Id. at 274-75. The court advised Petitioner to let the interpreter know if Petitioner was having any problems so the court could stop the proceedings and promptly address any problems. Id. at 275.

The record shows Petitioner was wearing headphones. Id. at 408, Ex. 21 at 527. Petitioner assured the court he was able to follow along with the assistance of the interpreters. Ex. 21 at 441, 510. When a new interpreter started, the court directed the clerk to place the interpreter under oath. Ex. 22 at 517. When the videotape of the interrogation was played for the jury, with the conversation in Spanish, the translators translated for the jury. Id. at 530, 556-57. When it came time to make decisions during the trial, the interpreters were present and assisted counsel and Petitioner. Id. at 604, 609.

Importantly, when it came time for Petitioner to announce his decision as to whether to testify or not, Petitioner asked for more time to discuss the decision with his attorney and the court granted that request. Id. at 705. After further discussion with counsel, Petitioner decided not to testify and announced his decision to the court. Id. at 705-708. Thereafter, Petitioner reviewed the jury instructions with the assistance of the interpreter and his attorneys, and Petitioner stated his approval of the instructions. Id. at 710, 717-719.

The trial court found no deficient performance on the part of counsel. As Petitioner has failed to satisfy the deficiency prong of the <u>Strickland</u> test, the Court need not address the prejudice prong. <u>Bester</u>, 836 F.3d at 1337. Petitioner exhausted his state court remedies by appealing the denial of his Rule 3.850 motion. The 1st DCA affirmed the decision of the trial court without opinion. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA.

When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in <u>Strickland</u>, 466 U.S. at 689. Given due consideration, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground five is due to be denied.

### E.  Ground Six

Petitioner, in his sixth ground for relief, claims a denial of his confrontation rights through the trial court's restriction of cross examination of Detective Bodine regarding his conversations with Jacob Smock and Nicholas Doland. Petition at 12-13. The

trial record demonstrates that Detective Patrick Bodine testified at trial. Ex. 22 at 519. Petitioner's counsel cross examined him. Id. at 582-97. Defense counsel wanted to inquire further about Detective Bodine's conversation with Jacob Smock about a $100 debt. Id. at 589. The state objected. Id. Defense counsel told the court he hoped to introduce a statement as a prior inconsistent statement of Jacob Smock. Id. at 590. The state imparted that the witness simply said he did not remember the date of the conversation, and the detective already testified that Smock's conversation with the victim took place the day of the murder. Id. Thus, the question had been asked and answered. Id. The state objected to the defense asking questions concerning the contents of the conversation as inadmissible hearsay and improper impeachment. Id. Defense counsel countered that he wanted to impeach Smock's statement through Detective Bodine's testimony, but the court sustained the state's objection. Id. at 591.

Petitioner also complained that the court restricted the cross examination concerning the relationship between the victim and Jacob Smock and the relationship between the victim and Nicholas Doland. In response to a question concerning whether their relationship was volatile, Detective Bodine testified that through his investigation, he discovered Nicholas Doland and the victim had some issues during their relationship. Id. at 587. Defense counsel inquired as to the relationship between the victim and Jacob Smock. Id. at 588. Detective Bodine testified that the

victim's mother described the relationship as volatile.  <u>Id</u>.
Detective Bodine also related that Jacob Smock and the victim were
sleeping together at the time of her death.  <u>Id</u>.  When defense
counsel attempted to inquire further as to Mr. Smock's responses
during his interview by the detective, the state objected, arguing
improper impeachment and stating the questions were asked and
answered by witnesses who already took the stand.  <u>Id</u>. at 588-89.
The court sustained the objection.  <u>Id</u>. at 589.

Petitioner raised the following claim on direct appeal: "[t]he
trial court erred in preventing defense counsel from cross-
examining detective Bodine about his interviews with Nicholas
Doland and Jacob Smock."  Ex. 24 at i.  On appeal, Petitioner
relied on the Confrontation Clause of the Sixth Amendment.  <u>Id</u>. at
22.  The state, in its answer brief responded that "at no time did
defense counsel argue a violation of Appellant's Sixth Amendment
right to confrontation with respect to the limited cross-
examination as he does now on appeal."  Ex. 25 at 8.  Thus, the
state asserted the Confrontation Clause claim was not preserved for
appellate review.[6]  <u>Id</u>. at 8-9.  Alternatively, the state addressed
the Confrontation Clause claim on its merits.  <u>Id</u>. at 9-15.  The
1st DCA, on November 23, 2011, per curiam affirmed, without
explanation.  Ex. 26.

---

[6] The state also argued that trial counsel made no proffer at
trial, failing to preserve his claims of error under Florida law.
Ex. 25 at 7-8.

The confrontation right secured by the Sixth Amendment is as follows:

> The Sixth Amendment states, in relevant part: "In all criminal prosecutions, the accused shall have the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. This is known as the Confrontation Clause and is made applicable to the States through the Fourteenth Amendment's Due Process Clause. <u>Pointer v. State</u>, 380 U.S. 400, 403-06, 85 S.Ct. 1065, 1068-69, 13 L.Ed.2d 923 (1965).

<u>Kormondy v. Sec'y, Fla. Dep't of Corr.</u>, 688 F.3d 1244, 1269 n.26 (11th Cir.), <u>cert</u>. <u>denied</u>. 568 U.S. 1051 (2012). "This bedrock procedural guarantee" is equally applicable "to both federal and state prosecutions." <u>See</u> <u>Crawford v. Washington</u>, 541 U.S. 36, 42 (2004) (quoting <u>Pointer v. Texas</u>, 380 U.S. 400, 406, (1965)).

Petitioner raised a Confrontation Clause claim on direct appeal. The state court was alerted to the federal nature of the claim through Petitioner's reliance on <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973); <u>Washington v. Texas</u>, 388 U.S. 14, 19 (1967); <u>Smith v. Illinois</u>, 390 U.S. 129 (1968). Ex. 24 at 22-23. The 1st DCA provided a summary denial, without explanation for its ruling. Although defense counsel did not specifically raise a Sixth Amendment Confrontation Clause challenge at trial, defense counsel's attempt to impeach the witnesses, objected to by the state on the basis of improper impeachment and hearsay, is closely related to the right of confrontation, so much so that this Court will address the matter on its merits. <u>See</u> <u>Evans v. State</u>, 838

So.2d 1090, 1097 n.5 (Fla. 2002) (per curiam) (finding failure to specifically assert a Sixth Amendment violation will not preclude review where the issue "is closely related to the right of confrontation"), cert. denied, 540 U.S. 846 (2003).

To the extent the 1st DCA adjudicated the matter on its merits, the state court's decision is entitled to deference. The Court finds Petitioner adequately exhausted his confrontation claim by presenting it on direct appeal. The 1st DCA affirmed per curiam. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as stated above. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. With regard to the confrontation claim, he has not accomplished that task.

Since there is a reasonable basis for the court to deny relief, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent. The state court's adjudication of this claim is not contrary to or an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief based on this claim. Thus, ground six is due to be denied.

Alternatively, if the state court ruling is not entitled to deference, the Court still finds Petitioner is not entitled to

habeas relief. To the extent Petitioner raised and exhausted a Confrontation Clause claim, he is not entitled to relief on ground six.

The Confrontation Clause "bars the admission of 'testimonial' hearsay unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination." <u>United States v. Berkman</u>, 433 F. App'x 859, 863 (11th Cir. 2011) (per curiam) (citing <u>Crawford</u>, 541 U.S. at 68). The record shows both Nicholas Doland and Jacob Smock were available and Petitioner had a prior opportunity to cross examine them. Both of these witnesses testified at trial and were readily available witnesses. Ex. 20 at 314-46, 355-94. Defense counsel thoroughly cross examined them. <u>Id</u>. at 329-46, 382-94.

Clearly defense counsel had the opportunity to impeach Smock's statements through cross examination of Smock. Additionally, defense counsel had the opportunity to impeach Doland's statements through cross examination of Doland. Although Smock did not remember the date he had the conversation with the victim concerning the $100 debt, Ex. 20 at 391, the detective testified it took place the day of the murder. Ex. 22 at 589. Thus, counsel obtained the testimony he needed confirming the date of the conversation between Smock and the victim. Detective Bodine was allowed to testify concerning the nature of the relationships between the victim and the two men, as discovered through Detective

Bodine's investigation.  It was only when defense counsel attempted to delve into the substance of the interviews of Doland and Smock that the trial court curtailed the cross examination.  Again, these witnesses were available and subject to cross examination at trial. There was no confrontation violation.  As such, ground six is due to be denied.

### F.  Ground Seven

In his final ground for relief, Petitioner raises a claim of ineffective assistance of appellate counsel for failure to raise the claim on appeal that the jury was given an erroneous instruction and not given a corrective instruction on manslaughter eliminating the intent element.  Petition at 15.  Petitioner exhausted this ground by raising it in a state petition for writ of habeas corpus.  Ex. 27.  The 1st DCA per curiam denied the claim of ineffective assistance of appellate counsel, with citation to McNeal v. State, 67 So.3d 407 (Fla. 2d DCA 2011).

As noted by Respondents in their Response, Petitioner was convicted of murder in the first degree, a conviction two-steps removed from the lesser offense of manslaughter.  Response at 68. Thus, with citation to McNeal, the 1st DCA imparted that Petitioner's claim is subject to harmless error analysis, and Petitioner would not prevail on the underlying claim.  McNeal, 67 So.3d at 409.  As in McNeal, the jury in Petitioner's case had the opportunity to convict Petitioner of murder in the second degree

and did not do so.  Ex. 17.  Thus, any error found in the manslaughter instruction provided to the jury was harmless.  Id.
As such, appellate counsel was not ineffective for failure to raise such a weak claim.

"Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland."  Philmore, 575 F.3d at 1264 (citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)).  The Eleventh Circuit has explained that "[i]n assessing an appellate attorney's performance, we are mindful that 'the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.' [...]  Rather, an effective attorney will weed out weaker arguments, even though they may have merit."  Id. (citing Heath, 941 F.2d at 1130-31).  Indeed, the "winnowing out of weaker arguments" is the "hallmark of effective advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986).

In this instance, there is a reasonable basis for the state court to deny relief on the claim of ineffective assistance of appellate counsel; therefore, the denial must be given deference.
On this record, the Court finds that the 1st DCA could have reasonably determined that appellate counsel was not ineffective for failure to raise the claim on appeal that the jury was given an erroneous instruction and not given a corrective instruction on manslaughter eliminating the intent element.  As the claim would have constituted harmless error in light of the jury's verdict of

guilty as to first degree murder, appellate counsel was not ineffective for winnowing out this weaker ground for appellate review. There was certainly a sound strategic basis for appellate counsel not to raise this feeble claim.

Assessing the viability of the erroneous instruction claim, there is no reasonable probability of success. On the other hand, there was ample reason for appellate counsel to focus on the more substantial ground for appellate review, the Sixth Amendment confrontation claim. Therefore, appellate counsel's performance was not deficient. Furthermore, Petitioner was not prejudiced as the 1st DCA ultimately found the claim concerning the manslaughter instruction subject to harmless error analysis, and based on the manslaughter count being two-steps removed form first degree murder, just like in <u>McNeal</u>, the claim would be fruitless as any error would be considered harmless.

The 1st DCA's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. There is no reasonable probability that Petitioner would have prevailed on his claim of an erroneous jury instruction. Accordingly, ground seven, the claim of ineffective assistance of appellate counsel, is due to be denied.

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.    The stay of the case is lifted.

2.    The Second Amended Petition (Doc. 7) is **DENIED**.

3.    This action is **DISMISSED WITH PREJUDICE**.

4.    The **Clerk** shall enter judgment accordingly and close this case.

5.    If Petitioner appeals the denial of his Second Amended Petition, **the Court denies a certificate of appealability**.[7] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of December, 2018.

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Upon due consideration, this Court will deny a certificate of appealability.

**BRIAN J. DAVIS**
**United States District Judge**

sa 12/10
c:
Benito Ramirez
Counsel of Record